IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| GREG DEWAYNE HURST, | : |
| Plaintiff, | : |
| VS. | : |
| | :    **7 : 13-CV-1 (HL)** |
| R. CARLTON POWELL, *et al.*, | : |
| Defendants. | : |

**RECOMMENDATION**

Plaintiff, who is proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 on January 2, 2013. (Doc. 1). Presently pending in this action are Defendant Powell and Williams's Motion for Summary Judgment, and Defendant Quick's Motion for Summary Judgment. (Docs. 35, 44).

**Background**

Plaintiff, a pretrial detainee at the time this action was filed, states that, while he was housed at Thomas County Jail ("TCJ"), Defendants were deliberately indifferent to Plaintiff's serious mental health needs. (Doc. 1). Defendant Williams, the chief jailer at TCJ, allegedly told Plaintiff that the jail did not have the money to provide Plaintiff with mental health treatment, and that Plaintiff would need to get mental health treatment after his release. Defendant Quick, a nurse at TCJ, tried to give Plaintiff medications of Defendant Quick's choice, and prohibited Plaintiff from receiving the medications that were suggested and prescribed by the psychologist. Plaintiff also alleges that Defendant Powell, the Thomas County sheriff, is liable because, as the sheriff, Defendant Powell was responsible for Plaintiff's treatment.

Defendants Powell and Williams filed their Motion for Summary Judgment on August 22, 2013. (Doc. 35). The following day, the Court notified Plaintiff of the filing of these Defendants' Motion for

Summary Judgment, advised him of his obligations under the law, and directed him to respond thereto within thirty (30) days of the date of the Court's Order. (Doc. 39). Plaintiff filed his Responses to Defendants Powell and Williams's Motion for Summary Judgment on August 28, 2013 and October 9, 2013. (Docs. 41, 43). Defendant Quick filed her Motion for Summary Judgment on November 20, 2013. (Doc. 44). On November 21, 2013, the Court notified Plaintiff of the filing of Defendant Quick's Motion for Summary Judgment, advised him of his obligations under the law, and directed him to respond thereto within thirty (30) days of the date of the Court's Order. (Doc. 45). Plaintiff has not filed a response to Defendant Quick's Motion for Summary Judgment.

**Standard of Review**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1). All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).

As the party moving for summary judgment, Defendants have the initial burden to demonstrate that no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The movant "always bears the

initial responsibility of informing the district court of the basis for its motion," and identifying those portions of the record, including pleadings, discovery materials, and affidavits, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it".  Fed R. Civ. P. 56(e)(3).

## Legal Standard

It appears Plaintiff was a pretrial detainee at all relevant times, and as such, conditions of confinement imposed on him were governed by the Fourteenth Amendment Due Process Clause. *Andujar v. Rodriquez*, 486 F.3d 1199, 1203 n. 3 (11th Cir. 2007).  "[T]he minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985).  Therefore, for the purposes of the undersigned's analysis of Plaintiff's allegations, the Court will apply the Eighth Amendment standard. *Id.*; *Vinson v. Clarke County, Ala.*, 10 F.Supp.2d 1282, 1293 (S.D. Ala., 1998).

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  In order to show that a prison official acted with deliberate indifference to a serious medical need, Plaintiff must prove that there is an "objectively serious medical need" and the "prison official acted with deliberate indifference to that need." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004).

To establish the objective element, a prisoner must show that the medical need poses a substantial risk of serious harm if left unattended. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir.

2003).  A serious medical need is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious even a lay person would easily recognize the necessity for a doctor's attention."  *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), overruled in part on other grounds, by *Hope v. Pelzer*, 536 U.S. 730 (2002).

To establish that a prison official acted with deliberate indifference to a serious medical need, Plaintiff must also show that the prison official had "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence."  *Brown*, 387 F.3d at 1351.  A prison official's subjective knowledge of a risk is a question of fact as to which the defendant "must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* [ ] must also draw the inference."  *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2007) (emphasis in original) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)).

A serious medical need can also be established if there is a delay in treatment that worsens the condition.  *Hill*, 40 F.3d at 1188-1189.  However, deliberate indifference entails more than mere negligence, and must be more than a medical judgment call or an inadvertent failure to provide medical care.  *Estelle*, 429 U.S. at 106; *Murrell v. Bennett*, 615 F.2d 306, 310 n. 4 (5th Cir. 1980).  Additionally, an inmate who receives adequate medical care, but disagrees with the mode or amount of treatment has not established deliberate indifference.  *See Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985); *Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir. 1991).

### Evidence

In asserting that they are entitled to summary judgment, Defendants Powell and Williams submitted Defendant Williams's affidavit, portions of Plaintiff's medical records, and portions of Plaintiff's TCJ records. (Docs. 38, 40).  Defendant Quick has submitted copies of discovery that was served on Plaintiff by Defendant Quick, and has relied on evidence already contained in the record,

specifically the evidence provided by Defendants Powell and Williams. (Docs. 44-3, 44-4). Plaintiff has provided no evidence[1], and has filed a Response containing argument only as to Defendants Powell and Williams's Motion for Summary Judgment. (Docs. 41, 43). As all Defendants are relying on Defendant Williams's affidavit, the portions of Plaintiff's medical records contained in the record, and the portions of Plaintiff's TCJ records contained in the record, the Court will discuss the Motions for Summary Judgment simultaneously.

The evidence shows that prior to April 1, 2012, medical treatment at TCJ was provided by TCJ staff, visiting nurses, and visiting doctors. (Doc. 38, Williams Aff., ¶ 14). TCJ "officials maintained a policy that, unless an inmate had been active in mental health treatment before his arrival at [TCJ], or unless a physician ordered the inmate to mental health treatment while he was in [TCJ], or if [TCJ] officials became aware of a serious medical need for mental health treatment, then [TCJ] officials would not coordinate and transport inmates to outside mental health treatment appointments." (*Id.* at ¶ 16). Beginning April 1, 2012, Transform Health began providing medical treatment at the jail, and as part of the treatment, a mental health counselor visited the jail twice each month. (*Id.* at ¶ 20).

Plaintiff was booked into TCJ on January 6, 2012. (*Id.* at ¶ 11). The medical questionnaire completed during Plaintiff's booking notes that "[i]nmate stated he [sic] on mental health". (*Id.* at ¶ 13 & p. 24). However, the medical questionnaire had "no" checked next to the question, "[h]as inmate recently seen a medical or psychiatric doctor for any illness?". (Doc. 38, p. 24). Within a week of arriving at TCJ, Plaintiff said that he needed an appointment made with Georgia Pines, a local mental

---

[1] Plaintiff provided a copy of what appears to be a work excuse for Plaintiff for a December 12, 2011 Georgia Pines appointment. (Doc. 43-1). "In order for a document to be considered in support of or in opposition to a motion for summary judgment, it must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e), and the affiant must be a person through whom the exhibits could be admitted into evidence." *Lucas v. State Farm Fire and Casualty Co.*, 864 F.Supp.2d 1346, 1357 (M.D. Ga., 2012) (internal citations omitted). Plaintiff's document has not been authenticated or attached to an affidavit. Even if the document had been authenticated and attached to an affidavit, the fact that Plaintiff attended an appointment at Georgia Pines prior to his incarceration does not create a genuine dispute as to a material fact in this case.

health facility.  (*Id.* at ¶ 17).  After Plaintiff made the request, Defendant Williams learned that Plaintiff had recently failed to attend an appointment at Georgia Pines before he was booked into TCJ. (*Id.*).  Defendant Williams notified Plaintiff that a mental health appointment would not be made for him per TCJ's policy regarding mental health treatment.  (*Id.* at ¶ 18).  Plaintiff was also not going to be transported to any mental health appointments made by family members because he had not been active in mental health treatment prior to his incarceration, and because of security reasons.  (*Id.* at ¶ 19).

     Plaintiff completed sick call requests on April 2, May 3, and December 31 of 2012; Plaintiff did not reference a need for mental health treatment in any of these sick call requests.  (*Id.* at ¶¶ 21, 22, 25, 35).  Plaintiff was seen by a Transform Health employee on April 17, 2012 for lower back pain.  (*Id.* at ¶ 24).  At this appointment, Plaintiff did not mention any need for mental health treatment.  (*Id.*).  On June 18, 2012, Plaintiff wrote a note stating that he was previously told he would be able to see mental health, and yet had not received any mental health treatment.  (*Id.* at ¶ 26).

     Non-party Nurse Olson examined Plaintiff on June 27, 2012.  (*Id.* at ¶ 27; Doc. 40, p. 36). During the examination, "Plaintiff complained of an alleged long history of bipolar disorder, ADHD and schizophrenia."  (Doc. 38, Williams Aff., ¶ 27).  Plaintiff stated that the only treatment that helped him was consuming large amounts of coffee.  (*Id.*; Doc. 40, p. 36).  Nurse Olson requested that the medical records from Georgia Pines be obtained.  (Docs. 38, Williams Aff., ¶ 27; 40, p. 35).  Two days later, Plaintiff was given a medical records release form for his mental health records from Georgia Pines and Southwestern State Hospital; Plaintiff became very hostile and refused to sign the release form.  (Docs. 38, Williams Aff., ¶ 28; 40, p. 35).

     Approximately two weeks later, Plaintiff was seen by Nurse Olson because of problems with his eyes.  (Docs. 38, Williams, Aff., ¶ 29; 40, p. 31).  Plaintiff was agitated and spoke rapidly, and asked

6

when he would be seeing mental health. (Docs. 38, Williams, Aff., ¶ 29; 40, p. 31). Nurse Olson prescribed anxiety medication, which was discontinued by a doctor three days later. (Docs. 38, Williams, Aff., ¶ 29; 40, p. 30-31).

In August of 2012, Plaintiff filed a grievance complaining that he was not receiving proper mental health treatment. (Doc. 38, Williams, Aff., ¶ 30). Defendant Williams told Plaintiff that he needed to release his medical records. (*Id.*). Defendant Williams testified that it was her impression that Plaintiff did not want to release the records because it would show he was not active in his mental health treatment outside of his incarceration periods. (*Id.*).

Plaintiff was seen by non-party Nurse Stanton on August 23, 2012. (*Id.* at ¶ 31; Doc. 40, p. 29). Plaintiff was very anxious, agitated, hyperverbal, rambling, and sweating and shaking. (Doc. 40, p. 29). The medical records note that Plaintiff said he could not take any of the medications that were offered to him. (*Id.*). Nurse Stanton noted that Plaintiff was "[a]ttempting to be very manipulative with [the] staff." (*Id.*; Doc. 38, Williams Aff., ¶ 31). Plaintiff was to be seen by non-party Dr. Warren during her next visit to the jail. (Doc. 40, p. 29).

On September 4, 2012, Plaintiff was seen by non-party Nurse McDonald for a mental health follow-up. (*Id.* at p. 28, Doc. 38, Williams Aff., ¶ 33). The medical records show that Plaintiff was angry, aggressive, argumentative, and paranoid. (Doc. 40, p. 28). Plaintiff reported taking coffee daily. (*Id.*). Plaintiff also reported being on Risperdal in the past, but Plaintiff refused to give the name of his physician. (*Id.*; Doc. 38, Williams Aff., ¶ 33). The medical record shows that Plaintiff only wanted stimulants, and Nurse McDonald noted that they were "attempting to obtain records from physician." (Docs. 40, p. 28; 38, Williams Aff.¶ 33).

Plaintiff was examined by Nurse Olson on January 1, 2013 due to cold and flu symptoms. (Doc. 38, Williams Aff., ¶ 35). There was no mention of mental health complaints in the medical notes. (*Id.*;

Doc. 40, p. 25). Plaintiff had a follow-up mental health appointment in April of 2013. (Docs. 38, Williams, Aff., ¶ 36; 40, p. 19). Plaintiff was paranoid, irritable, and angry during the appointment, and he refused to talk about any medications except stimulants. (Docs. 38, Williams, Aff., ¶ 36; 40, p. 19).

On June 26, 2013, Plaintiff was released from TCJ. (Doc. 38, Williams, Aff., ¶ 38). Defendant Williams testified that she is not aware of Plaintiff ever authorizing the release of his alleged mental health treatment records. (*Id.*). It is still Defendant Williams belief that Plaintiff "has not been active in mental health treatment during periods of time outside the [j]ail." (*Id.*).

**Analysis**

Plaintiff contends that Defendants Williams and Quick were deliberately indifferent to Plaintiff's serious mental health needs because Defendant Williams denied Plaintiff mental health treatment, and because Defendant Quick prohibited Plaintiff from receiving medication that was prescribed to him. (Doc. 1).

There is no evidence showing Plaintiff suffered from an objectively serious mental health need. Plaintiff told Nurse Olson that he suffered from bipolar disorder, ADHD, and schizophrenia. However, the medical records submitted by Defendants do not support Plaintiff's allegations, and Plaintiff has failed to place any medical evidence into the record to verify the seriousness of his alleged mental health disorders. At most, the evidence shows that Plaintiff was angry, agitated, and paranoid on a few occasions, and that Plaintiff stated he needed large amounts of coffee to feel better. Based on the evidence contained in the record, a reasonable jury could not conclude that Plaintiff suffered from an objectively serious medical need. *See Crum v. Thomasville County Jail*, 2007 WL 2570781, *10 (M.D. Ga., Aug. 31, 2007) (finding the plaintiff failed to place verifying medical evidence into the record to establish the seriousness of his alleged mental disorders and had not alleged

any injury as a result of the lack of mental health treatment, and had therefore failed to establish that he suffered an objectively reasonable serious medical need); *R.T. v. Gross*, 298 F.Supp.2d 289, 296 (N.D.N.Y. 2003) ("Because Plaintiff has not submitted any verifiable evidence indicating that a failure to treat his [bipolar disorder] adversely affected his prognosis, he cannot be said to have had a serious medical need.").

Regardless of whether Plaintiff suffered an objectively serious medical need, the evidence shows that Plaintiff received adequate medical care. While Plaintiff's request to be taken to Georgia Pines for mental health treatment was denied by Defendant Williams, Plaintiff was seen by medical professionals at TCJ for mental health treatment. Plaintiff, however, refused to cooperate with the medical care providers. Plaintiff would not sign a medical release form so that TCJ could obtain his mental health records, and he refused to provide his physician's name. Nurse Stanton noted that Plaintiff was "[a]ttempting to be very manipulative with [the] staff." (Doc. 40, p. 29). However, TCJ continued to provide Plaintiff with treatment for his mental health complaints. There is no evidence showing that Plaintiff was prohibited from receiving allegedly prescribed medications. Rather, the record shows that Plaintiff said he could not take the medications that were offered to him, and that he only wanted to discuss stimulants.

The record shows that Plaintiff was given adequate medical treatment for his mental health complaints. Therefore, Plaintiff's Eighth Amendment rights were not violated, and Defendants Williams and Quick were not deliberately indifferent to Plaintiff's allegedly serious mental health needs. *See Harris*, 941 F.2d at 1507 ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); *Waldrop v. Evans*, 871 F.2d 1030, 103 (11th Cir. 1989) ("when a prison inmate has received medical care, courts hesitate

to find an Eighth Amendment violation").

Additionally, Plaintiff alleges that Defendant Powell is vicariously liable because he is the sheriff of Thomas County, and is therefore responsible for the events that take place at Thomas County Jail. (Doc. 1). A supervisor cannot be liable under § 1983 for the unconstitutional acts of his subordinates on the basis of *respondeat superior*, or vicarious liability. *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).

There are no allegations or evidence to show that Defendant Powell was personally involved in any alleged denial of Plaintiff's Eighth Amendment rights, nor are there allegations or evidence that there is a causal connection between Defendant Powell and the alleged denial of rights. Accordingly, there is no genuine issue of material fact remaining as to the claim alleged against Defendant Powell, and he is entitled to summary judgment as well.

## Conclusion

Plaintiff has failed to rebut Defendants' summary judgment showings, and thus Plaintiff's claims cannot survive Defendants' Motions for Summary Judgment. It is the recommendation of the undersigned that Defendants Powell and Williams's Motion for Summary Judgment (Doc. 35) be **GRANTED**, and that Defendant Quick's Motion for Summary Judgment (Doc. 44) be **GRANTED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to the recommendations contained herein with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**SO RECOMMENDED**, this 5th day of February, 2014.

                s/ ***THOMAS Q. LANGSTAFF***
                **UNITED STATES MAGISTRATE JUDGE**